**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JACQUELINE L. WRIGHT,**<br>9512 Blanchard Drive<br>Ft. Washington, Maryland 20744,<br><br>Plaintiff,<br><br>v.<br><br>**SUPERIOR COURT OF THE**<br>**DISTRICT OF COLUMBIA,**<br>500 Indiana Avenue, N.W.<br>Washington, D.C. 20001-2131,<br><br>Serve:  Ms. Anne B. Wicks<br>Executive Officer<br>500 Indiana Avenue, N.W.<br>Washington, D.C.  20001-2131<br>Defendant. | Civil Action No: _____ |

**CIVIL COMPLAINT**

**NOW COMES** Plaintiff, Jacqueline L. Wright, by and through her undersigned counsel, and, pursuant to Fed. R. Civ. P. 8 and 10, files this civil complaint for damages.  Plaintiff states herein as follows:

**JURISDICTION AND VENUE**

1. This Complaint is authorized and instituted pursuant to § 704 of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-3, and § 105(a)(2) of the Family and Medical Leave Act of 1990 ("FMLA"), 29 U.S.C. § 2615(a)(2).  Since this Complaint asserts claims arising under the laws of the United States, this Court has original jurisdiction over those claims.

2. Venue is proper in this judicial district as the claims alleged in this Complaint occurred within this judicial district and Defendant is a government employer that is subject to the

jurisdiction of this Court.

## PARTIES

3. Plaintiff is a citizen of the United States and resides in the State of Maryland. At all times relevant to this Complaint, Plaintiff was an "employee" within the meaning of Title VII and the FMLA.

4. Defendant is the court of general jurisdiction for the District of Columbia. At all times relevant to this Complaint, Defendant was an "employer" within the meaning of Title VII and the FMLA.

## ADMINISTRATIVE PROCEDURES

5. On February 11, 2016, Plaintiff timely filed her Charge of Discrimination against Defendant with the U.S. Equal Employment Commission ("EEOC"), alleging that she had suffered unlawful retaliation and different terms and conditions of employment after she had opposed unlawful discriminatory employment practices and participated in EEOC activities. It was assigned Charge No. 570-2016-00644.

6. On September 23, 2016, Plaintiff received a notice of Right to Sue letter from the EEOC. Less than ninety (90) days have elapsed between Plaintiff's receipt of the notice of Right to Sue letter and the filing of this Complaint.

7. Plaintiff, therefore, invokes her statutory right to sue under Title VII in that she has satisfied all administrative and judicial prerequisites to the institution of this action.

## FACTS COMMON TO ALL CLAIMS

8. Plaintiff has been employed by Defendant since May 21, 1990.

9. Since her hire, Plaintiff regularly has received promotions and at all times has been at least a satisfactory performer.

10. Since May 21, 1990, Plaintiff has been employed by Defendant. In 2008, Plaintiff was promoted to the position of Program Manager in Defendant's Court Social Services Division ("CSSD"). That position is a supervisory position involving the exercise of considerable operational and supervisory control. As a Program Manager, Plaintiff regularly has exercised supervisory control over a staff comprised of Probation Officers ("PO") and Supervisory Probation Officers ("SPO"), as well as Deputy Clerks ("DC") and various administrative personnel.

11. For performance years 2008-2009 through the 2014-2015 performance cycles, Plaintiff was evaluated as at least a "meets expectations" performer. For performance years 2013-2014 and 2014-2015 performance years, Plaintiff was rated as an "exceeds expectations" performer. In her 2013-2014 performance appraisal, Plaintiff's supervisor, Terri Odom, Director of Court Social Services Division, noted Plaintiff's exceptional service. In Plaintiff's 2014-2015 performance appraisal, her supervisors noted "[c]ongratulations to you on an exceptional year!!!" and that "[y]ou have been a super asset this year!"

12. At all times relevant to this Complaint, Plaintiff was the Program Manager responsible for two satellite offices, the Southeast Satellite Office ("SESO") and the Southwest Satellite Office ("SWSO"). She also managed two additional juvenile supervision teams: the juvenile intensive supervision team Ultimate Transition Ultimate Responsibility Now (UTURN) and the Interstate Compact Supervision Team, both located on the D.C. Courts' campus located at 510 4th Street N.W., Washington, D.C.

13. In 2014, a Probation Officer that Plaintiff supervised, Corey Weireke, commenced activities protected under Title VII by opposing practices that he considered discriminatory. Plaintiff discussed that complaint of discrimination with him.

14. On October 10, 2014, Plaintiff became aware that Weireke was engaging in statutorily-protected activities. Plaintiff became aware of such activities after she was informed of Weireke's protected activities through an e-mail from Defendant's EEO office.

15. Ms. Odom summoned Plaintiff to a meeting on January 23, 2015, where she berated Plaintiff about Weireke's protected activity. She accused Plaintiff of having Weireke directed to file an EEO charge and told her that she did not believe that Plaintiff "stood on the side of management."

16. On February 24, 2015, Plaintiff was reprimanded about an incident that occurred four (4) months earlier involving a confrontation initiated in October 2014 by an employee that Plaintiff supervised, Shirley Whitfield. Such corrective action violated the terms of Defendant's policies, procedures and practices regarding disciplinary measures which require that corrective measures be issued within thirty (30) days of the alleged violation. At no time before Plaintiff had been castigated by Ms. Odom in January 2015, had Ms. Odom or any other manager informed Plaintiff that she had acted inappropriately regarding Ms. Whitfield.

16. In July 2015, Ms. Odom learned that Weireke had filed a charge of discrimination with the EEOC.

17. On or about September 10, 2015, Weireke reported to his supervisor, SPO Tosha Layton, that he had been threatened by a juvenile that he was supervising. Ms. Layton reported that incident to Plaintiff who advised Ms. Layton consistent with what she understood were CSSD policies and practices.

18. On October 2, 2015, a meeting concerning the threat made to Weireke by the juvenile that he supervised was held with Weireke, the plaintiff, management officials, led by Acting

Deputy Director, Michael Barnes, Plaintiff's immediate supervisor. Pursuant to Ms. Odom's directive, Mr. Barnes led the meeting on Ms. Odom's behalf. Although Ms. Odom did not attend the meeting, she was informed fully of the situation. Following that meeting, Ms. Odom met with the Plaintiff and stated that she did not believe that Weireke's statements about the threat were true and accurate. At no time prior to the meeting or after that meeting did Ms. Odom inform Plaintiff that she needed to contact the Metropolitan Police Department ("MPD") about the threat that had been directed to Weireke or that she was required to contact the Office of the Attorney General for the District of Columbia ("OAG").

19. On October 19, 2015, after PO Natasha Kalinski informed her SPO supervisor that her boyfriend had assaulted her and damaged her agency-issued cellular phone, Plaintiff sought guidance from Ms. Odom. At that time, Ms. Odom informed Plaintiff that she could not contact the MPD and that such call had to be made personally by the employee victimized by the assault.

20. Subsequently, on October 23, 2015, Plaintiff discussed her activities relating to the Weireke matter with Ms. Odom and Mr. Barnes at a meeting in Alexandria, Virginia. At that meeting, Ms. Odom did not censure Plaintiff for her actions regarding the Weireke threat. At no time during that meeting did Ms. Odom or Mr. Barnes provide any guidance to Plaintiff concerning whether she was expected to have contacted MPD or the OAG regarding the Weireke threat.

21. On October 30, 2015, Ms. Odom came to the SWSO, where Plaintiff was working, but refused to speak to her. When Plaintiff questioned Ms. Odom's ostracism to the Acting Deputy Director, Michael Barnes, he told Plaintiff that it was because Weireke had filed a

charge of discrimination with the EEOC.

22. On November 10, 2015, during a managers' meeting, Ms. Odom discussed a directive that required that, whenever a staff member is physically assaulted or threatened, MPD must be contacted.

23. At a staff meeting held on December 1, 2015, Ms. Odom verbally reprimanded Plaintiff during a staff meeting, angrily accusing her of "not being on management's side" concerning Weireke's charge of discrimination.

24. On December 7, 2015, Plaintiff received a letter of reprimand from Mr. Barnes, the Acting Deputy Director, regarding her handling of the Weireke threat. That letter of reprimand was well outside the period 30-day period defined in Defendant's policies, procedures and practices regarding the issuance of discipline, including letters of reprimand.

25. On December 11, 2015, Plaintiff responded to the letter of reprimand.

26. On December 21, 2015, the Acting Deputy Director issued a letter affirming the letter of reprimand. Plaintiff appealed that action to the CSSD Director, Ms. Odom.

27. Plaintiff's counsel, on December 28, 2015, informed Defendant's counsel that he represented Plaintiff regarding Odom and the CSSD.

28. On January 6, 2016, Ms. Odom sent Plaintiff a highly unprofessional and abusive memorandum upholding the Acting Deputy Director's decision. That venomous document accused Plaintiff, in her December 11, 2015 response of asserting a "plethora of lies stated by you," "blatant lie[s],' "attempting to bully the Office of the Director and use of condescending, caustic and irreverent communications" and "merchandising misery throughout the corridors of the CSSD." Plaintiff immediately appealed Ms. Odom's action to the Executive Officer.

29. On January 28, 2016, the Deputy Executive Officer denied her appeal.

30. Odom's retaliatory and abusive actions described above caused Plaintiff severe emotional distress, anxiety and exacerbated her hypertension, affecting her ability to perform her job.

31. As a result of Odom's retaliatory and abusive actions, Plaintiff was unable to work and, in January 2016, requested family and medical leave.

32. In January 2016, Plaintiff treated with her medical treatment provider. On January 21, 2016, that medical treatment provider completed a Certification of Health Care Provider for Employee for Plaintiff's requested family and medical leave. That form noted that Plaintiff was suffering from chest pain and elevated blood pressure. It recommended that Plaintiff be off work from January 22 – February 15, 2016.

33. Plaintiff's counsel sent Defendant's Assistant General Counsel a letter, dated February 1, 2016, requesting an immediate transfer from the CSSD and Odom's supervision, without loss of pay or status, from the CSSD to avoid further retaliation from Ms. Odom. That letter also detailed additional retaliatory actions by Ms. Odom including the removal from Plaintiff's supervision of Deputy Clerk Sharon Proctor, the denial of promotions for two Probation Officers and the refusal to replenish a necessary nutrition card for juveniles at the Balance and Restorative Justice ("BARJ") Drop-in Center.

34. Defendant ignored the matters raised in the February 1, 2016 letter, including Plaintiff's transfer request.

35. On February 4, 2016, Plaintiff was approved for family and medical leave.

36. Plaintiff returned to work on February 16, 2016 and resumed her duties as Program Manager.

37. Despite having notice of Plaintiff's protected activity, Ms. Odom, in 2016, continued a

campaign of intimidation and ridicule, as well as efforts to thwart Plaintiff's ability to function effectively as a Program Manager. Those efforts have included:

(a) Denying the requested promotions of POs Brandon Kerr and Derrick Christian, despite their qualifications for the promotions and the recommendations of Plaintiff and their immediate supervisors;

(b) Denying funding requested for nutrition cards for the SWSO BARJ Drop-in Center, resulting in the SWSO's inability to fully provide nutrition for juvenile clients;

(c) Removing from Plaintiff's supervision Deputy Clerk Sharon Proctor and refusing to subsequently staff the position, resulting in additional administrative burdens affecting Plaintiff's job performance;

(d) In February 2016, transferring, without notice to Plaintiff and while she was on medical leave, two of her most experienced POs, Carl Johnson and Kathy Holiday-Crawford, to another satellite office managed by Program Manager Sheila Roberson-Adams; and

(e) Removing services and facilities from the SWSO and SESO and moving those services and facilities to NESO.

38. Other similarly-situated Program Managers, Sheila Roberson-Adams nor Pauline Francis, that have not engaged in protected activities were not subjected to an abusive work environment, were not abused by Ms. Odom, did not experience interference in their job responsibilities, have their veracity openly questioned, denial of promotions and the removal of personnel without their knowledge and approval. Neither Ms. Roberson-Adams and Ms. Francis have been required to operate their satellite offices without required administrative staff and POs.

39. Odom's actions taken after learning that Plaintiff supported and "was not on management's side" regarding the Weireke discrimination complaint were continuous, not isolated and directly affected Plaintiff's terms and conditions of employment, including directly attacking her veracity, refusing a transfer away from Odom's abusive conduct and interfering directly with her ability to perform as a Program Manager by removing personnel and resources and denying her recommendations for promotions of needed personnel.

40. In her performance appraisal for the 2015-2016 performance cycle, delivered in summer 2016, after Plaintiff had engaged in activities protected by § 704 and during the course of the retaliatory actions taken against her by Odom, Plaintiff was rated as a "meets expectations" performer, lower than her previous performance appraisal, where she was rated as an "exceeds expectations" performer.

41. The lowering of Plaintiff's performance appraisal negatively affects Plaintiff's compensation and limits her promotional opportunities.

42. Odom's actions were materially adverse within the meaning of § 704 of Title VII in that those actions would dissuade a reasonable employee from filing a complaint of discrimination with the EEOC or Defendant.

43. But for Plaintiff's actions in opposing unlawful employment actions and participating in EEO activities, Odom would not have taken the retaliatory actions described above.

44. The reasons given for the actions taken against Plaintiff are pretextual.

45. As a result of the above-described actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this

litigation.

## COUNT I

## UNLAWFUL RETALIATION IN VIOLATION OF § 704 OF TITLE VII

46. Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 45 of this Complaint as though they are fully set forth herein and makes them part hereof and, furthermore, states as follows.

47. Plaintiff engaged in protected activities under § 704 of Title VII by opposing unlawful discriminatory actions and participating in EEO activities by discussing Weireke's complaint of discrimination with him.

48. Beginning in January 2015, Plaintiff was threatened and intimidated by Odom and other CSSD managers for opposing unlawful employment practices and participating in EEO activities.

49. Such retaliatory actions increased in severity and frequency beginning on December 1, 2015 and continue to the date of this Complaint, including written reprimands, lowering Plaintiff's performance evaluation affecting her compensation and promotional opportunities, questioning Plaintiff's veracity, verbal attacks by Odom, removal of personnel, denial of resources for satellite offices under Plaintiff's supervision and denial of promotions.

50. Those actions were materially adverse within the meaning of § 704 of Title VII, 42 U.S.C. § 2000e-3, since they would dissuade a reasonable employee from filing a complaint with the EEOC.

51. There is a causal connection between Plaintiff's protected activity and the materially adverse actions taken against her and, but-for Plaintiff's protected activity, those material

adverse actions would not have been taken against Plaintiff.

52. The reasons articulated by Defendant for the adverse actions taken against Plaintiff are false and pretextual.

53. As a result of the above-stated actions, Plaintiff has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## COUNT II

### INTERFERENCE WITH THE EXERCISE OF RIGHTS IN VIOLATION OF § 105(a)(2) OF THE FMLA

54. Plaintiff repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶ 1 through 53 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

55. In January 2016, Plaintiff began exercising rights protected under §§ 102-104 of the FMLA, 29 U.S.C. § 2612-2614, by requesting statutorily-protected rights under the FMLA.

56. After Plaintiff sought the protection of rights secured by the FMLA, Odom and other CSSD managers restrained Plaintiff in the exercise of her rights guaranteed under §§ 102-104 of the FMLA, including, but not limited to, frustrating Plaintiff's efforts to perform her job, lowering her performance appraisal affecting negatively her compensation and promotional opportunities, removing personnel, denying promotion recommendations, and thwarting Plaintiff's ability to effectively manage her satellite offices.

57. Defendant's interference with Plaintiff's exercise of her rights under the FMLA began in January 2016 and continues to the date of this Complaint.

58. Plaintiff's exercise of rights protected by the FMLA was a motivating factor in the decisions actions described above.

60. The reasons articulated by Defendant for its interference with Plaintiff's exercise of rights under the FMLA are false and pretextual.

61. As a result of the above-described actions, Plaintiff has suffered economic and non-economic damages including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.  Plaintiff also is entitled, pursuant to § 107(a)(1)(A) of the FMLA, 29 U.S.C. § 2617(a)(1)(A), to liquidated damages of an equal amount for all wages, salary, employment benefits or other compensation lost resulting from Defendant's unlawful violations of the FMLA.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays this Honorable Court should grant her the following relief:

(1) Defendant's conduct is in violation of Title VII and the FMLA;

(2) Defendant pays Plaintiff a sum of $300,000 for compensatory, emotional distress and anxiety damages;

(3) Defendant pays Plaintiff's attorney's fees and costs incurred in this action; and

(4) Defendant pays such other and further equitable relief to Plaintiff as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

DATED:  DECEMBER 18, 2016.

_____
Nathaniel D. Johnson, Esq. (MD #14729)
Attorney for Plaintiff
THE JOHNSON LAW OFFICE
10665 Stanhaven Place, Suite 3101
White Plains, Maryland 20695
(301) 645-9103
ndjesquire@gmail.com